IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF IOWA, CENTRAL DIVISION

| | |
|---|---|
| GLENN GOLDEN dba G2 DATABASE MARKETING and G2 DATABASE MARKETING, INC., <br><br>         Plaintiffs <br> v. <br><br> JONATHAN A. STEIN dba LAW OFFICES OF JONATHAN STEIN, <br><br>         Defendant. | Case No. 4:18-cv-00331-JAJ-CFB <br><br> **INTERVENOR GABRIELINO-TONGVA TRIBE'S BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT** |
| JONATHAN STEIN dba LAW OFFICES OF JONATHAN STEIN, <br><br>         Counterclaimant <br><br> v. <br><br> GLENN GOLDEN dba G2 DATABASE MARKETING, and G2 DATABASE MARKETING, INC. <br><br>         Counterclaim Defendants. | |
| GABRIELINO-TONGVA TRIBE, <br><br>         Intervenor Plaintiff <br><br> v. <br><br> JONATHAN STEIN dba LAW OFFICES OF JONATHAN STEIN; LINDA HONG SUN STEIN; ST. MONICA DEVELOPMENT COMPANY, LLC; LAW OFFICES OF JONATHAN STEIN, P.C.; and DOES 1-20, <br><br>         Intervenor Defendants. | |

**TABLE OF CONTENTS**

I.   INTRODUCTION                                                                                    3

II.  STATEMENT OF FACTS                                                                              4

    A.  The California Action                                                                       4

    B.  Trial of the California Action (2016 – 2019)                                                5

    C.  Stein's Fraudulent Transfers During Trial (Dec. 2018 – Feb. 2019)                           6

    D.  Judgment and Statement of Decision                                                          8

    E.  Stein's Post-Judgment Obstruction in Iowa                                                   8

III. LEGAL ARGUMENT                                                                                 13

    A.  Legal Standard on Summary Judgment                                                         13

    B.  Claim One: Equitable Proceedings                                                           14

        1.  Legal Standard                                                                         14

        2.  Application                                                                            14

            a.  Elements of Section 630.16                                                           14

            b.  Badges of Fraud                                                                      14

    C.  Claim Two: Declaratory Judgment                                                            18

        1.  Legal Standard                                                                         18

        2.  Application                                                                            19

    D.  Discovery                                                                                  21

IV.  CONCLUSION                                                                                     22

## I.      INTRODUCTION

Fifteen years ago, the Tribe sued Jonathan Stein in California for stealing the Tribe's identity, defrauding the Tribe, and committing legal malpractice.  In August 2019, the trial court entered judgment for the Tribe.  Today, the judgment is over $32 million.

Despite its best efforts, the Tribe has not been able to collect a penny on its judgment. Stein has obstructed the Tribe's collection efforts at every turn, with baseless new lawsuits, frivolous appeals, dilatory pleadings, threats, and other abusive acts.

Last year, the Tribe registered its judgment in Iowa to levy on (1) Stein's chose-in-action herein and (2) Stein's rights to the Federal Deposit (defined below).  Stein failed to resist the Tribe's registration, and the Polk County Sheriff served the Tribe's levies on the Clerk of this Court.  Stein then derailed the levies at the eleventh hour by contending, for the first time, that he had transferred his rights to the above assets to his wife three years ago, just after the trial court entered the $20 million compensatory damages award against Stein.

Stein's obstruction forced the Tribe to intervene in this action.  The sole purpose of the Tribe's intervention is to obtain a judicial determination that Jonathan Stein, and only Jonathan Stein, owns his rights to his chose-in-action and the Federal Deposit, so that the Tribe may finally levy on those assets and obtain partial satisfaction of its judgment.

The Tribe hereby seeks summary judgment of its two causes of action against Jonathan Stein; Linda Hong Sun Stein; St. Monica Development Company, LLC; and Law Offices of Jonathan Stein, P.C.  There are no genuine issues of material fact as to either cause of action:

(1)      On the first claim for Equitable Proceedings, Stein and his wife possess rights to property and claims belonging to Stein, *i.e.* the Federal Deposit and Stein's chose-in-action, which the Tribe may levy to satisfy part of the Tribe's judgment against Stein.

(2)     On the second claim for a Declaratory Judgment, the Tribe is entitled to a judicial

declaration of its rights to the Federal Deposit and Stein's chose-in-action, as a judgment creditor

of Jonathan Stein.  To the extent that Stein's fraudulent transfers of the above assets underlie

either of the Tribe's claims, there are no genuine issues that the transfers were indeed fraudulent.

Accordingly, the Tribe respectfully requests the Court grant this Motion.

## II.     STATEMENT OF FACTS

### A.     The California Action

On November 2, 2006, the Tribe sued Jonathan Stein in California, arising from Stein's

fraud and malpractice against the Tribe dating back to the year 2000 (the "California Action").

(Appx. 047 - 048.)  Roughly thirteen years later, on August 27, 2019, the Tribe obtained a

judgment of $20,411,067.23 in compensatory damages and $7,000,000.00 in punitive damages

("Judgment") against Stein and his adjudicated alter egos, Jonathan Stein dba Law Offices of

Jonathan Stein ("Law Offices") and St. Monica Development Company, LLC ("SMDC").

(Appx. 039 - 046.)

The central holding of the Judgment is that Stein stole the Tribe's identity, formed a sham

tribe, and defrauded the Tribe out of over $20 million.  (*Id*.)  The trial court specifically found

Stein's misconduct "fraudulent, despicable, oppressive and malicious."  (Appx. 053, ¶ 88.)

On the same date as the Judgment, the trial court concurrently issued a 138-page

Statement of Decision, finding, *inter alia*:

> Stein committed many incidences of fraud.  Stein's fraud against the
> Tribe began with the inception of his relationship with them ... It
> continued after their relationship ended, when this litigation had
> already started.   Stein took the identity of the Tribe using
> membership records without permission, and registered a different
> group with the Secretary of State with the exact same name as the
> Tribe, as an unincorporated association, and then tried to settle the
> instant lawsuit [with himself].  Evidence of fraud is extensive and at

the center of this case. Stein engaged in oppressive and malicious conduct. Stein set up the Tribe's offices in his Law Offices and gave his law manager … the job of Tribal Administrator, in order to control the Tribe and its legal and financial affairs. And when the Tribal Councilmembers confronted Stein in those offices, Stein threatened them, threw objects at them, and cast them out of their own offices. In the Court's view, among the worse things Stein did was his failure to return the Tribe's original birth and family records to the Tribe after Stein was fired/resigned … thus preventing the Tribe from pursuing federal recognition (a 25-30 year process). To this day, almost 15-20 years later, Stein has not returned the records. Stein is a recidivist in targeting Native Americans for exploitation …. Stein preyed upon Native American groups … and when he could not persuade them, he later sued them to gain access to their records …. Stein used his status as a lawyer, a position of trust, as a weapon against a less sophisticated client. Further, Stein used litigation as a weapon … against the Tribe.

(Appx. 053 – 055.)

## B. Trial of the California Action (2016 – 2019)

The Honorable Judge Yvette Palazuelos presided over a trifurcated trial in the California Action. (Appx. 049 - 051 at ¶¶14-17.) The first phase of trial was on the Tribe's identity and standing. (Appx. 049 ¶14.) The second phase was on liability and compensatory damages. (Appx. 016 – 025; Appx. 049 – 050 at ¶¶ 15-16.) The third phase was on punitive damages. (Appx. 016 – 025; Appx. 050 – 051 at ¶17.)

After the first phase of trial, the court ruled that the Tribe is the only Tribe, and that Stein's sham tribe is not the real Tribe. (Appx. 049 at ¶ 14, Appx. 052 at ¶71; Appx. 053 – 056.)

After the second phase, on November 8, 2018, the court issued an order (1) finding Stein, SMDC and Law Offices liable on all fourteen of the Tribe's causes of action, (2) awarding the Tribe $20,411,067.23 in compensatory damages; (3) finding that Stein, SMDC and Law Offices acted with malice, oppression and fraud against the Tribe; and (4) finding that Stein, SMDC and Law Offices are alter egos of one another ("Compensatory Damages Award"). (Appx. 016 – 025.)

The Compensatory Damages Award also scheduled the third phase of trial, ordering Stein and his alter egos to disclose their financial records to the Tribe within a week, and to personally appear with their accountants for the third phase of trial. (*Id.*)

Stein failed to comply with the Compensatory Damages Award. (Appx. 050 – 051 at ¶ 17; Appx. 056 – 062; Appx. 067.) Stein failed to satisfy any portion of the monetary award. (Appx. 002 at ¶ 8; Appx. 014 at ¶ 7.) Stein failed to produce his financial records, his Law Offices' financial records, or SMDC's financial records. (Appx. 050 – 051 at ¶ 17; Appx. 056 at ¶¶ 94-95.) Stein and his accountants failed to appear for the third phase of trial. (*Id.*) The trial court issued a punitive damages award of $7 million. (Appx. 039 - 046; Appx. 061 at ¶ 104.)

**C.    Stein's Fraudulent Transfers During Trial (December 2018 – February 2019)**

Instead of complying with the trial court's order and disclosing his assets to the Tribe, Stein did the exact opposite: transferring and concealing his assets from the Tribe <u>during trial</u>.

On <u>December 1, 2018</u>, Jonathan Stein and his wife, Linda Hong Sun Stein, executed a written agreement whereby Stein purported to assign to his wife 50% of his right, title and interest in "Assigned Personal Property," identified as "(i) his claims and chose in action in the LASC Fee Litigation; (ii) his counterclaims and chose in action in the *Stein adv Golden* [*sic*]; (iii) his account receivable under the ACRA [Attorney-Client Retainer Agreement] and the Account Stated and Final Demand Letter; and (iv) his lien rights under the Claim of Lien" in exchange for $440,000 ("Assignment No. 1"). (Appx. 026 – 029.)

On <u>December 14, 2018</u>, less than two weeks after executing Assignment No. 1, Stein amended his Answer and Counterclaim in this action to allege that "Stein's beneficial rights . . . have been partially or wholly assigned to third parties," who "waive any challenge to the personal jurisdiction of this Court," and Stein remains the "actual counterclaimant." (Appx. 009

at ¶¶ 73 – 77; Appx. 031.)  Stein's Amended Answer failed to identify any such "third parties." (*Id.*)

On <u>December 21, 2018</u>, Stein incorporated his DBA law practice as "Law Offices of Jonathan Stein, **P.C.**" (the "Professional Corporation").  (Appx. 033 – 034; Appx. 038.)  For the previous 28 years, Stein had operated Law Offices in his individual capacity, as a fictitious business name.  (Appx. 012 at ¶ 92; Appx. 063 – 064 at ¶ 172; Appx. 272 - 278.)  Stein thus incorporated his law practice a month after the Compensatory Damages Award to convert the assets of debtor Law Offices to a newly-formed, non-debtor corporation.[1]

On <u>February 1, 2019</u>, Jonathan and Linda Stein executed another written agreement whereby Stein purported to assign to his wife "all of his right, title and interest in and to: (i) his remaining fifty percent (50.00%) of the Account Stated Amount of $880,825; and (ii) ninety-nine percent (99.00%) of the Assigned Choses in Action, to the extend of any amount realized beyond the Account Stated Amount of $880,825, all in return for" $460,000 ("Assignment No. 2").  (Appx. 035 - 037.)  Jonathan Stein failed to disclose the existence of Assignment No. 1 or Assignment No. 2 to the Tribe until September 3, 2020.  (Appx. 005 at ¶ 32; Appx. 015 at ¶ 11; Appx. 098 – 106.)  Jonathan Stein failed to provide a copy of either Assignment No. 1 or Assignment No. 2 to the Tribe until October 13, 2020.  (Appx. 152 – 159; Appx. 015 at ¶ 13.)

---

[1] Stein's fraudulent transfers of his Law Offices' assets to the Professional Corporation are part of a pending lawsuit between the Tribe and the Steins in Santa Barbara, California (Case No. 21CV00198).  This Motion does not seek a judicial declaration with respect to those transfers. As it concerns the Professional Corporation, this Motion only seeks a judicial declaration that (1) the Professional Corporation owns no interest in Jonathan Stein's rights to the Federal Deposit or Golden Litigation, whether through Assignment No. 1, Assignment No. 2, or otherwise; and (2) if the Professional Corporation does claim any such ownership interest, the Tribe may execute its Levies directly against the Professional Corporation pursuant to Iowa Code § 630.16, *infra*.

Although Stein executed Assignment Nos. 1 and 2, and amended his Answer herein, Stein continued to litigate his claims against Golden and defend Golden's claims against him. (Appx. 010 at ¶76.)  Although Linda Stein purportedly "waive[d] any challenge to the personal jurisdiction of this Court" in December 2018, Mrs. Stein failed to appear in this action at any point until after the Tribe's intervention over two years later.  (Appx. 010 at ¶76; Appx. 026 – 029; Appx. 035 – 037; Appx. 031.)  In fact, once the Tribe intervened, Mrs. Stein actively <u>challenged</u> this Court's jurisdiction over her, and continues to do so today.  (Appx. 010 at ¶ 80; Appx. 026 – 029; Appx. 035 – 037; Appx. 031; Appx. 230 – 233.)

**D.     Judgment and Statement of Decision**

On <u>August 27, 2019</u>, the California court entered the Judgment and Statement of Decision.  (Appx. 039 – 046; Appx. 047 - 065.)  The Judgment is virtually identical to the Compensatory Damages Award, adding punitive damages.  (Appx. 016 – 025; Appx. 039 - 046.)  On <u>November 5, 2019</u>, the California court denied Stein's motion for a new trial.  (Appx. 067.)  On <u>November 8, 2019</u>, Stein appealed but did not bond the Judgment.  (Appx. 003 at ¶ 16.)

**E.     Stein's Post-Judgment Obstruction in Iowa**

On <u>July 29, 2020</u>, the Tribe filed its Affidavit of Foreign Judgment and Amount Owed in the Iowa District Court for Polk County, Case No. 05771 CVCV 060511 ("State Court") thereby registering the Tribe's Judgment in Iowa.  (Appx. 069 – 079.)  On <u>July 31, 2020</u>, the State Court issued a Notice of Filing of Foreign Judgment.  (Appx. 080.)  Stein did not object to or resist the Tribe's domestication of the Judgment in Iowa.  (Appx. 004 at ¶ 21; Appx. 235 – 236.)

On <u>August 21, 2020</u>, the Tribe filed its Praecipe Request for General Execution with the State Court.  (Appx. 081 - 091.)  On <u>August 26, 2020</u>, the State Court issued a General Execution directing the Polk County Sheriff's Office ("Sheriff") to levy on Stein's assets per the

Tribe's instructions. (Appx. 092.) On <u>August 28, 2020</u>, the Tribe submitted its Dictation for Execution and Directions to the Sheriff, requesting the Sheriff issue two levies: (1) a docket levy on any and all interests of Jonathan Stein in the chose-in-action styled, *Glenn Golden et al. v. Jonathan Stein et al.*, Case No. 4:18-cv-00331-JAJ-CFB in this Court ("Golden Litigation"); and (2) a second docket levy and garnishment on all funds currently held by or subsequently received by the Clerk of this Court, with specific reference to roughly $880,000.00 deposited with and being held by the Clerk of this Court pursuant to this Court's Opinion and Order entered in Case No. 4:16-cv-00529-JAJ-CFB ("Federal Deposit"). (Appx. 093 – 094.) The Tribe hereinafter refers to the levies on the Golden Litigation and Federal Deposit as the "Levies."

On <u>September 1, 2020</u>, Jonathan Stein's local counsel, Joshua Moon, emailed the Sheriff and stated: "Stein does not have any significant ownership interest in the property subject to execution; instead third parties not subject to the California Judgment are owners pursuant to assignments dated from 2018." (Appx. 095 – 097.) This email did not identify Linda Stein as an assignee. (*Id*.) On <u>September 3, 2020</u>, Mr. Moon sent a 9-page letter to the Sheriff and stated, *inter alia*: "This letter serves as formal notice to the Polk County Sheriff that Mr. Stein has assigned the most valuable part of his right, title and interest in the subject property, with minor exceptions, to Linda Hong Sun Stein." (Appx. 098 – 106.) Mr. Moon copied the Tribe's counsel on this letter. (*Id*.) This was the first time that the Tribe learned of any assignment by Mr. Stein to Mrs. Stein. (Appx. 005 at ¶ 32; Appx. 015 at ¶ 11.)

On <u>September 8 and 9, 2020</u>, the Sheriff served the Levies on the Clerk of this Court. (Appx. 005 at ¶ 34.) On <u>September 10, 2020</u>, Linda Stein signed an affidavit contending that she owns "all right, title and interest" of Jonathan Stein "in all amounts held by the United States District Court for the Southern District of Iowa," including the Federal Deposit and "all earnings

thereon." Linda Stein further attested that she owns 99% "in all right, title and interest" of Jonathan Stein in the Golden Litigation. (Appx. 107 - 108.) Linda Stein further attested that she had paid her husband cash in the amount of $900,000.00 for the transfers, in "cancellation of indebtedness." (Appx. 109.)

On <u>September 15, 2020</u>, Mr. Moon sent a copy of Mrs. Stein's affidavit to the Sheriff. (Appx. 006 at ¶ 37.) The Sheriff forwarded a copy to the Tribe's counsel on the same day. (*Id.*) On <u>September 22, 2020</u>, Jonathan and Linda Stein sued the Tribe in the State Court ("Iowa Complaint"). (Appx. 111 - 123.) The Iowa Complaint misrepresented that the Tribe was not the "real" Tribe, and asked the unfamiliar State Court to adjudicate the fully-adjudicated issue of the Tribe's identity. (*Id.*) Worse, the Steins added multiple other entities from California bearing the names "Gabrielino" and/or "Tongva" as defendants, <u>including Stein's sham tribe</u>, to further confuse the State Court. (Appx. 113 - 115.) The Steins styled their complaint as an "interpleader" by depositing a total of $100 towards satisfaction of the Tribe's $30,000,000-plus Judgment, and asking the State Court to preside over an entirely new action to determine which defendant gets to keep the deposit. (Appx. 118 at ¶ 25.) The Steins never served the Iowa Complaint on any of the defendants. (Appx. 006 at ¶ 40.)

On <u>September 23, 2020</u>, the Sheriff issued a letter to the Tribe, requiring the Tribe to post a bond of $1,350,000 to indemnify the Sheriff for any damages that the Sheriff may owe Linda Stein by executing potentially improper Levies. (Appx. 124.) The Sheriff's letter to the Tribe further stated that without such an indemnification bond, the Sheriff would release the Levies. (Appx. 124 - 128.)

On <u>September 24, 2020</u>, two days after filing the Iowa Complaint, Mr. Moon sent a 23-page letter to the Sheriff on behalf of the Steins, attaching a copy of the Iowa Complaint, and threatening to sue the Sheriff if the Sheriff attempted to execute the Levies. (Appx. 129 - 138.)

As a result of the Steins' harassment, the Sheriff required the Tribe to post the bond of $1,350,000 to indemnify the Sheriff for any damages that the Sheriff may owe Linda Stein by executing potentially improper Levies. (Appx. 124 - 128.) Without the bond, the Sheriff would release the Levies. (*Id.*) The Tribe was not able to post the bond. (Appx. 007 at ¶ 46.)

On <u>October 9, 2020</u>, the Tribe moved the State Court to quash the bond requirement. (Appx. 007 at ¶ 47.) Unfortunately, the State Court held that it could not quash the bond requirement because, as a technical matter, Iowa law allowed the Sheriff to require such a bond from a judgment creditor:

> To be clear, the Court is not holding that the purported assignments *are* valid nor that the Polk County Sheriff *should* require an indemnity bond. However, pursuant to Iowa Code § 626.54, the decision to request a bond is the Polk County Sheriff's to make.

(Appx. 199.) (Emphasis in original.) The Tribe was not able to post the bond, and the Sheriff released the Levies. (Appx. 007 at ¶ 50.)

On <u>October 13, 2020</u>, Stein for the first time produced copies of Assignments No. 1 and No. 2 to the Tribe. (Appx. 152 – 159.)

On <u>October 14, 2020</u>, the Tribe moved to dismiss the Iowa Complaint. (Appx. 008 at ¶ 57.) The State Court granted the motion and dismissed Stein's Iowa Complaint with prejudice as to the Tribe. (Appx. 204.) Stein immediately appealed that order. (Appx. 008 at ¶ 59.)

On <u>October 16, 2020</u>, the Tribe filed a Motion to Stay Trial and a Motion to Intervene in this action. (Appx. 008 at ¶ 60.) On the same day, the Court held a telephonic hearing on both motions. (Appx. 160 – 192.)

On <u>October 17, 2020</u>, the Court granted the Tribe's Motion to Stay Trial. (Appx. 193 – 196.) On <u>November 18, 2020</u>, Jonathan Stein for the first time produced Assignments No. 1 and 2 to this Court. (Appx. 201 – 203.)

On <u>February 3, 2021</u>, the Court granted the Tribe's Motion to Intervene:

> [D]etermination of whether Stein is the real party in interest, whether Stein has validly assigned some or all of his interests to his wife, and whether the Tribe is entitled to levy on Stein's chose-in-action and the Federal Deposit, whether in Stein's hands or his wife's, appear to this court to be questions properly resolved *before* the existing parties engage in the expense of a trial. It is possible that resolution of those issues will lead to a more prompt, economical, and appropriate resolution of this litigation.

(Appx. 222.) (Internal citations omitted.) (Emphasis in original.)

On <u>March 9, 2021</u>, Jonathan Stein, SMDC, and the Professional Corporation moved to dismiss the Tribe's Intervention Complaint, despite this Court already finding intervention mandatory. (Appx. 009 at ¶ 69; Appx. 211 – 229.) On <u>April 8, 2021</u>, Linda Stein separately moved to dismiss the Tribe's Intervention Complaint. (Appx. 230 – 233.) On <u>May 27, 2021</u>, the Court denied both motions, with the exception of dismissing the Tribe's prayer for attorney's fees against Linda Stein. (Appx. 271.)

### III.      LEGAL ARGUMENT

**A.      Legal Standard on Summary Judgment**

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Once the movant has met its burden, "the opponent must affirmatively show that a material issue of fact remains in dispute and may not simply rest of the hope of discrediting the movant's evidence at trial." *Barge v. Anheuser-Busch, Inc.*, 87 F.3d 256, 260 (8th Cir. 1996).

"[A]n issue of material fact is genuine if the evidence is sufficient to allow a reasonable jury verdict for the nonmoving party." *Great Plains Real Estate Dev., L.L.c. v. Union Cent. Life Ins. Et al.*, 536 F.3d 939, 944 (8th Cir. 2008). "As to materiality, the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "Simply referencing the complaint, or alleging that a fact is otherwise, is insufficient to show there is a genuine issue for trial." *Kountze v. Gaines*, 536 F.3d 813, 818 (8th Cir. 2008). Similarly, "[t]he mere existence of a scintilla of evidence in support of the [nonmovant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmovant]." *Anderson*, 477 U.S. at 252.

**B.     Claim One: Equitable Proceedings**

**1.     Legal Standard**

Section 630.16 of the Iowa Code, titled "Equitable Proceedings," allows a judgment creditor to commence an action against the debtor and third parties to collect on the judgment:

> At any time after the rendition of a judgment, an action by equitable proceedings may be brought to subject any property, money, rights, credits, or interest therein belonging to the defendant to the satisfaction of such judgment. In such action, persons indebted to the judgment debtor, or holding any property or money in which such debtor has any interest, or the evidences of securities for the same, may be made defendants.

Section 630.16 "furnishes means auxiliary to execution by which a creditor may uncover property in which the debtor still holds an interest." *Powell v. Grewing*, 562 N.W.2d 761, 763 (Iowa 1997). A claim under Section 630.16 is described as a "petition for a creditor's bill." *Garton v. Garton*, 533 N.W.2d 828, 830 (Iowa 1995).

## 2. Application

There are no genuine issues of material fact with respect to the Tribe's first claim.  The undisputed evidence establishes that the Tribe may execute on Jonathan Stein's rights to the Federal Deposit and Golden Litigation towards satisfaction of the Tribe's Judgment.

### a. Elements of Section 630.16

With respect to the black-letter elements of Section 630.16:

(1)     The Tribe is a judgment creditor of Jonathan Stein.  (Appx. 039 - 046.)

(2)     Jonathan and Linda Stein are in possession of Jonathan Stein's rights to the Federal Deposit and the Golden Litigation.  (Appx. 026 – 029; Appx. 035 – 037; Appx. 107 – 110; Appx. 098 – 106; Appx. 129 – 151.)

(3)     The Tribe may levy on Jonathan Stein's rights to the Federal Deposit and the Golden Litigation, whether those rights are in the hands of Jonathan Stein, Linda Stein, or any other individual or entity, such as SMDC or the Professional Corporation.

### b. Badges of Fraud

The primary basis for the Tribe's first claim is that Jonathan Stein fraudulently transferred his rights to the Federal Deposit and Golden Litigation to his wife.  Although the Tribe has not alleged (and does not have to allege) a claim under the Uniform Voidable Transactions Act ("UVTA"), application of the UVTA's "badges of fraud" establishes that Stein's transfers were fraudulent as a matter of law.

"A transfer made or obligation incurred by a debtor is voidable as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation . . . [w]ith actual intent to hinder, delay, or defraud any creditor of the debtor."  Iowa Code § 684.4(1)(a).  "In determining actual intent . . .

consideration may be given . . . to whether any or all of the following apply . . . ."  Iowa Code §
684.4(2).

First, Assignment No. 1 and Assignment No. 2 were by Jonathan Stein to an insider, his
wife, Linda Stein.  *See* Iowa Code § 684.4(2)(a); (Appx. 026 – 029; Appx. 035 – 037; Appx. 107
– 110; Appx. 098 – 106; Appx. 129 – 151.)  "The existence of a 'blood relationship' strengthens
the inference of a fraudulent conveyance, although it is not a per se indication of fraud."  *Benson
v. Richardson*, 537 N.W. 2d 748, 756 (Iowa 1995); (Appx. 262.)

Second, Jonathan Stein retained possession and control of the subject assets after
purportedly assigning them to his wife.  Stein remained the "actual counterclaimant" in this
action and continued to vigorously litigate his claims against Glenn Golden, as if there were no
assignments at all.  *See* Iowa Code § 684.4(2)(b); (Appx. 010 at ¶ 76; Appx. 031.)  In fact, Stein
did not even produce copies of Assignments No. 1 or No. 2 to this Court until November 18,
2020, one month after the Tribe moved to intervene.  (Appx. 202.)  Further, Linda Stein
purported to "waive any challenge to the personal jurisdiction of this Court" in December 2018;
however, not only did Mrs. Stein fail to appear in this action at any point until after the Tribe's
intervention, but she continues to actively challenge the Court's jurisdiction over her to this very
day.  (Appx. 010 at ¶ 80; Appx. 026 – 029; Appx. 035 – 037; Appx. 031; Appx. 231 – 232.)

Third, Stein concealed the assignments from the Tribe.  *See* Iowa Code § 684.4(2)(c).
Despite purportedly executing the assignments on December 1, 2018 and February 1, 2019, Stein
failed to disclose to the Tribe the existence of the assignments until nearly two years later, on
September 3, 2020, *after* the Tribe had initiated its Levies.  Stein failed to provide copies of
either assignment agreement to the Tribe until October 13, 2020.  (Appx. 005 at ¶ 32; Appx. 015
at ¶ 11; Appx. 098 – 106; Appx. 152 – 159; Appx. 221.)

**Fourth**, the Tribe had sued Jonathan Stein in California before the Steins executed Assignment No. 1 and Assignment No. 2. Iowa Code § 684.4(2)(d); (Appx. 047 at ¶ 1.) In fact, Stein made both assignments <u>in the middle of trial</u> in the California Action, executing Assignment No. 1 just 22 days after the Compensatory Damages Award and Assignment No. 2 just three months after the Compensatory Damages Award, *supra*.

**Fifth**, the subject assignments were for substantially all of Jonathan Stein's assets. *See* Iowa Code § 684.4(2)(e); (Appx. 026 – 029; Appx. 035 – 037; Appx. 237 – 238.)

Linda Stein's recent judicial admissions confirm:

> In December 2018 and February 2019, [Jonathan] Stein was facing financial difficulties, being owed $880,825 in fees for three years of hard work. Stein owed attorney's fees for the 2006 Litigation, and had spent so much of his own time and money prosecuting the Clear Advantage litigation, that he had little time left to earn a living. Facing several more years of litigation in *Golden v. Stein* before being able to see any 'cash in the bank', [*sic*] Stein made Assignments #1 and #2 with Hong Sun . . . Hong Sun's substantial property and bank accounts were held separately from Stein's meager holdings.

(Appx. 231 – 232.)

**Sixth**, Stein concealed his assets from the Tribe. *See* Iowa Code § 684.4(2)(g). Not only did Stein conceal the assignments, *supra*, but Stein refused to appear during the third phase of trial to disclose his assets to the Tribe. (Appx. 050 – 051 at ¶ 17; Appx. 056 at ¶¶ 94-95 – 062; Appx. 067.) Far from disclosing his assets, Stein orchestrated an unlawful asset protection scheme (in the middle of trial) to preclude the Tribe from discovering any of his assets. (*See* Section II(D), *supra*.)

**Seventh**, Stein did not receive reasonably equivalent value in exchange for his purported assignments to his wife. *See* Iowa Code § 684.4(2)(h). While Linda Stein attests in her September 10, 2020 affidavit that she paid Jonathan Stein a whopping $900,000 <u>in cash</u>, neither

Jonathan nor Linda Stein have produced any backup documents to substantiate that claim, whether through bank statements, deposit slips, withdrawal receipts, declared income on tax returns, or otherwise. (Appx. 010 at ¶ 81 – 011 at ¶ 84.) The Steins have had plenty of opportunities to do so, in the California court during the third phase of trial (which was exclusively on Stein's assets), in response to the Tribe's post-judgment discovery requests, to the Polk County Sheriff, in the Iowa State Court, and in this Court. (*Id.*)

Eighth, Stein was insolvent or became insolvent at the time of the subject assignments, as demonstrated by (1) the express language of Assignments No. 1 and 2; (2) the sheer size of the $20 million Compensatory Damages Award; (3) Stein's inability to bond the Judgment; and (4) the Steins' recent judicial admissions of Stein's depleted financial status and "meager holdings" during the relevant time period. *See* Iowa Code § 684.4(2)(i); (Appx. 016 – 025; Appx. 026 – 029; Appx. 035 – 037; Appx. 231 – 232.)

Finally, the assignments occurred shortly before Stein incurred a substantial debt, the Judgment. *See* Iowa Code § 684.4(2)(j); (Appx. 039 – 046; Appx. 026 – 029; Appx. 035 - 037.)

When this Court denied the Steins' respective Motions to Dismiss, the Court emphasized the most pertinent "badges" in this action:

> What provides sufficient plausibility rather than mere plausibility of fraudulent assignments, here, are factual allegations concerning the pendency or threat of third-party creditor litigation, in light of the final order of the California court awarding the Tribe over $20,000,000 in compensatory damages and the making of the Assignments shortly thereafter, the allegation that the Assignments were concealed from the Tribe until it attempted to levy on Stein's property; and Stein's reservation of benefits and/or possession of the property, albeit only 1% of his chose-in-action, but full control of the litigation. *See id.* The Tribe also alleges that the assignments, while not between blood relatives, were between married individuals, which raises the same inference of a fraudulent conveyance warranting close scrutiny. *Id.*

(Appx. 262.)

Now, the undisputed evidence establishes each allegation that the Court deemed pertinent at the pleading stage. The Tribe notes that virtually all of the above "badges" are objectively verifiable facts, and not matters of belief or opinion. For example, it is indisputable that Linda Stein is the wife of Jonathan Stein; that the Tribe's claims against Jonathan Stein arose before Stein executed the assignments; that Stein executed the assignments in the middle of trial, during the third phase on Stein's financial condition, immediately after the trial court's entry of the $20 million Compensatory Damages Award; that Stein amended his Answer herein immediately after executing Assignment No. 1, but failed to identify the assignee or produce the actual assignments to the Tribe or the Court until after the Sheriff served the Levies on the Clerk of this Court two years later; or that Stein executed the assignments just before the California court's entry of the $27 million Judgment. These are "hard" facts. Thus, the Steins may not fabricate triable issues by "alleging that a fact is otherwise." *Kountze v. Gaines*, 536 F.3d 813, 818 (8th Cir. 2008).

Therefore, the Tribe is entitled to summary judgment of its first cause of action.

## C.     Claim Two: Declaratory Judgment

### 1.     Legal Standard

The Declaratory Judgment Act, 28 U.S.C. § 2201(a) provides, in pertinent part:

> In a case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.

In denying the Steins' respective Motions to Dismiss the Tribe's Intervention Complaint, the Court held that an "actual controversy" exists with respect to the Tribe's claim for a declaratory judgment. (Appx. 252 – 256.)

## 2.    Application

The Tribe seeks six declarations and an injunction:

a.    A declaratory judgment stating that any agreement between Jonathan and Linda Stein, or between Jonathan Stein and any other individual or entity purporting to assign, transfer, encumber or in any way affect Jonathan Stein's rights to or ownership of the <u>Golden Litigation</u>, is fraudulent and void as a matter of law;

b.    A declaratory judgment stating that any agreement between Jonathan and Linda Stein, or between Jonathan Stein and any other individual or entity, purporting to assign, transfer, encumber or in any way affect Jonathan Stein's rights to or ownership of the <u>Federal Deposit</u>, is fraudulent and void as a matter of law;

c.    A declaratory judgment stating that Jonathan Stein, and only Jonathan Stein, and no other individual or entity, is the sole real party in interest, for all purposes, with respect to the <u>Golden Litigation</u>;

d.    A declaratory judgment stating that Jonathan Stein, and only Jonathan Stein, and no other individual or entity, is the sole real party in interest, for all purposes, with respect to the <u>Federal Deposit</u>;

e.    A declaratory judgment stating that the Tribe, as a judgment creditor of Jonathan Stein, has the right to fully execute a levy or levies on the <u>Golden Litigation</u>, towards satisfaction of the Tribe's Judgment;

f.    A declaratory judgment stating that the Tribe, as a judgment creditor of Jonathan Stein, has the right to fully execute a levy or levies on the <u>Federal Deposit</u>, towards satisfaction of the Tribe's Judgment; and

g.    A permanent injunction restraining Jonathan Stein, Linda Stein, SMDC, and any other individual or entity, from selling, transferring, encumbering, or in any way compromising their rights to or interest in the Golden Litigation and/or the Federal Deposit, in a matter adverse to the Tribe.

Declaratory relief is proper: "(1) when the judgment will serve a useful purpose in clarifying and settling the legal relations in issue, and (2) when it will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceedings." *Alsager v. District Court of Polk County (Juvenile Div.)*, 518 F.2d 1160, 1163-64 (8th Cir. 1975).

Here, the Tribe is entitled to a declaratory judgment for all the reasons articulated in Section III(B)(3)(b), above. Thus, the Tribe incorporates Section III(B)(3)(b) by reference herein, which equally establishes the Tribe's right to summary judgment of its second claim.

The Steins' fraudulent transfers have forced the Tribe to intervene in this action and seek a declaratory judgment. *See Textron Fin. Corp.*, 545 N.W.2d at 885; *see also Olson v. Elsbernd*, No. 10-0236, 2010 WL 5023241, at *4 (Iowa Ct. App. Dec. 8, 2010) (finding prejudice to the creditor where levy and execution would have been available, but by reason of the fraudulent conveyance, the creditor "would have to commence some kind of judicial proceeding to enforce that lien," and "[t]he prospect of going forward with enforcement of a lien against the new owner under that provision would be more arduous, costly, and less certain" for the creditor).

Had the Steins not obstructed the Sheriff's Levies by raising their fraudulent transfers as a shield, the Tribe would have executed on the Federal Deposit and Stein's chose-in-action last year. Now, declaratory relief is necessary because (1) the requested judgment will, once and for all, clarify and settle the rights to the Federal Deposit and the Golden Litigation; and (2) the judgment will terminate and afford relief from the uncertainty, insecurity and controversy that the Steins fabricated to evade the Tribe's collection efforts. *Alsager*, 518 F.2d at 1163-64.

The Tribe notes that Jonathan Stein has disobeyed the orders and judicial process of multiple courts in California and Iowa. (Appx. 061 at ¶ 103.) The Tribe anticipates that Stein may similarly attempt to subvert any declaratory relief favorable to the Tribe in this Court, including by again threatening the Sheriff into requiring an indemnification bond that the Tribe cannot afford, or immediately appealing any negative ruling solely for the sake of delay, such as by informing the Sheriff that the Tribe's prospective levies are "stayed" pending such an appeal.

Accordingly, if the Court grants this Motion, the Tribe kindly asks the Court to consider any additional language or relief that the Court may deem proper, to curtail any anticipated obstruction by the Steins or anyone else on their behalf or at their direction.

**D.    Discovery**

The Tribe anticipates that Jonathan Stein and his co-defendants will resist this Motion on the grounds that they have not yet conducted discovery in this action.

However, Rule 56(b) provides that "a party may file a motion for summary judgment <u>at any time</u> until 30 days after the close of discovery." (Emphasis added.) The Committee Notes accompanying the 2009 Amendment to Rule 56 clarify that "[t]he new rule allows a party to move for summary judgment at any time, <u>even as early as the commencement of the action</u>." (Emphasis added.) Even prior to the 2009 amendment, the Eighth Circuit held that Rule 56 "does not require trial courts to allow parties to conduct discovery before entering summary judgment." *Humphreys v. Roche Biomedical Labs., Inc*., 990 F.2d 1078, 1081 (8th Cir. 1993); *see also Ray v. Am. Airlines, Inc*., 609 F.3d 917, 922-24 (8th Cir. 2010).

As this Court summarized in *Pharm. Care Mgmt. Ass'n v. Gerhart*, Case No. 14-0345 (S.D. Iowa Feb. 19, 2015), citing *Humphreys*, 990 F.2d at 1081, "a court is not required to either allow discovery prior to a summary judgment motion or to allow parties to use a [Rule] 56(d) motion as a shield to unjustifiably block or delay summary judgment." In *Pharm. Care Mgmt. Ass'n*, the plaintiff filed a motion for partial summary judgment while the defendants' motion to dismiss was still pending. Here, the Court has already denied all motions to dismiss.

"Discovery need not be completed before a court may grant summary judgment, [citation omitted], and it is not necessary in every situation." *Hess v. Citibank, (South Dakota), N.A*., 459 F.3d 837, 846 (8th Cir. 2006), citing *Iverson v. Johnson Gas Appliance Co*., 172 F.3d 524, 530

(8th Cir. 1999). In *Hess*, Citibank responded to the plaintiff's complaint with a motion for summary judgment, and the district court stayed discovery pending its resolution. *Hess* upheld the district court's decision. *Hess*, 459 F.3d at 846. In *GEICO Cas. Co. v. Isaacson*, 923 F.3d 721, 726 (8th Cir. 2019), the court did not allow defendant to conduct discovery.

In *Toben*, the defendant moved for summary judgment before merits discovery commenced. In response, the plaintiff requested a stay on briefing or to allow merits discovery. The district court denied both requests and entered summary judgment for the defendant. On review, the panel upheld the ruling, finding that while the plaintiff had set forth facts she hoped to elicit from merits discovery and showed how the facts were essential to resist summary judgment, she failed to show that the facts sought exist. *Toben*, 751 F.3d at 895.

The relevant question is whether the failure to allow discovery deprives the nonmovant of a fair chance to respond to the motion. Here, there is no such concern, as the Steins possess all information pertinent to the Tribe's Motion. It is the Steins, and only the Steins, who possess documents and information pertaining to their Assignment No. 1, Assignment No. 2, Linda Stein's Affidavit, and the Steins' communications with the Sheriff. The remaining material facts are objectively verifiable events, *supra.*

In fact, it is the Tribe who is "in the dark" as to discovery. For example, the Tribe still does not have any documents from the Steins substantiating Linda Stein's purported all-cash payment of $900,000 for the assignments. However, the Tribe is willing to forego discovery as the Tribe is confident it can obtain summary judgment based on the badges of fraud above.

## IV.    CONCLUSION

For the above reasons, the Tribe respectfully requests the Court grant this Motion for Summary Judgment.

RESPECTFULLY SUBMITTED this 7th day of July, 2021

*/s/ Armen Manasserian*
Armen Manasserian (Cal. SBN 288199)
CHORA YOUNG & MANASSERIAN LLP
650 Sierra Madre Villa Ave., Suite 304
Pasadena, CA 91107
PHONE: (626) 744-1838
FAX:   (626) 744-3167
Email: armen@cym.law

*/s/ Bradley R. Kruse*
Bradley R. Kruse AT0004483
DICKINSON, MACKAMAN,
TYLER & HAGEN, P.C.
699 Walnut Street, Suite 1600
Des Moines, IA  50309
PHONE: (515) 244-2600
FAX:   (515) 246-4550

Email: bkruse@dickinsonlaw.com

ATTORNEYS FOR INTERVENOR,
GABRIELINO-TONGVA TRIBE

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on the 7th day of July, 2021, the foregoing instrument was electronically filed with the Clerk of Court using the EDFS system and a true copy will be electronically delivered to each of the attorneys or parties of record herein as set forth below via the EDFS system and/or via U.S. Mail:

Joshua M. Moon, AT 0011013
3151 Brockway Road
P.O. Box 810
Waterloo, Iowa 50704
TEL: 319.234.4471
FAX: 319.234.8029
E-MAIL: jmoon@duttonfirm.com

Thomas P. Frerichs AT0002705
FRERICHS LAW OFFICE, PC.,
P.O. Box 328
106 East Fourth Street
Waterloo, IA 50704
(319) 236-7206 (fax)
(319) 236-7204 (tel)
tfrerichs@frerichslaw.com

John Kass Rubiner
FREEMAN MATHIS & GARY, LLP
550 SOUTH HOPE STREET
SUITE 2200
LOS ANGELES, CA 90071
213-615-7000
Fax: 213-615-7100
Email: jrubiner@fmglaw.com

Jonathan Alan Stein
2520 Murrell Road
Santa Barbara, CA 93109
310-968-4455
Email: jstein@jsteinlaw.com

/s/*Jennifer Housholder*
Jennifer Housholder