**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF IOWA**
**CENTRAL DIVISION**

| | |
|---|---|
| GLENN GOLDEN and G2 DATABASE MARKETING, INC., <br><br>                 Plaintiffs, <br> vs. <br><br> JONATHAN A. STEIN, <br><br><br>                 Defendant. | No. 4:18-cv-00331-JAJ-HCA <br><br> **OPINION AND ORDER REGARDING INTERVENOR GABRIELINO-TONGVA TRIBE'S MOTION FOR SUMMARY JUDGMENT** |
| JONATHAN STEIN, dba Law Offices of Jonathan Stein, <br><br>                 Counterclaimant, <br> vs. <br><br> GLENN GOLDEN, dba G2 DATABASE MARKETING; and G2 DATABASE MARKETING, INC., <br><br>                 Counterclaim Defendants. | |
| GABRIELINO-TONGVA TRIBE, <br><br>                 Intervenor Plaintiff, <br> vs. <br><br> JONATHAN STEIN dba LAW OFFICES OF JONATHAN STEIN; LINDA HONG SUN STEIN; ST. MONICA DEVELOPMENT COMPANY, L.L.C.; LAW OFFICES OF JONATHAN STEIN, P.C.; and DOES 1-20 <br><br>                 Intervenor Defendants. | |

This action originally involved only the claims of Glenn Golden and G2 Database Marketing, Inc., (collectively, Golden) against their former attorney, Jonathan A. Stein, for professional malpractice in underlying intellectual property litigation and Stein's counterclaims to collect unpaid attorney's fees and costs incurred in the underlying litigation plus collection costs. The Gabrielino-Tongva Tribe was granted leave to intervene, however, claiming an interest relating to the property that is the subject of this action—specifically, the portion of the settlement funds from the underlying intellectual property litigation deposited with the Clerk of Court (the Federal Deposit) and Stein's causes of action in this litigation—for the purpose of determining the Tribe's right to, and right to execute on, levies against that property based on a judgment against Stein that the Tribe obtained in California state court. This action is now before the court on the Tribe's July 8, 2021, Motion For Summary Judgment [Dkt. No. 387]. For the reasons set out below, the Tribe's July 8, 2021, Motion For Summary Judgment [Dkt. No. 387] is **GRANTED in part and DENIED in part**.

## I.    INTRODUCTION

For the sake of simplicity, in the course of this decision, the court will refer to the intervenor defendants—Jonathan Stein, his wife Linda Hong Sun Stein (Hong Sun), his Law Offices in their "dba" or P.C. form, and St. Monica Development Company, L.L.C.—collectively as "Stein," unless the circumstances require otherwise. In doing so, the court does not intend to attribute to other intervenor defendants, such as Hong Sun, actions taken by Stein that are at issue in the parties' claims or defenses, unless otherwise indicated.

### A.    Preliminary Evidentiary Issues

The court has rarely, if ever, encountered factual statements in support of or resistance to summary judgment to which so many objections have been made. This court has also never encountered a case in which the parties have asserted that even the most trivial, irrelevant, or immaterial factual disputes are dispositive of a summary judgment motion. Furthermore, many of the parties' purported factual statements are legal

conclusions or legal arguments, rather than factual assertions.  In short, gleaning genuine issues of *material* fact from the parties' submissions has been an unusually difficult process for the court.  *See, e.g., Villanueva v. City of Scottsbluff*, 779 F.3d 507, 510 (8th Cir. 2015) ("'Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.  Factual disputes that are irrelevant or unnecessary will not be counted.'" (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986))).

A great many of Stein's objections to the Tribe's statements of fact are pursuant to Rules 401, 403, and 404 of the Federal Rules of Evidence.  While those rules protect jurors from irrelevant or unduly prejudicial evidence, excluding evidence pursuant to those rules is premature on a court's review of the record at summary judgment.  The evidence is admissible but the court leaves it to the next judge to determine whether to admit it.  Objections based on those rules are even less of a concern when, as here, the Tribe's claims will be tried to the court, because they are equitable.

That point deserves some further development.  There is no jury demand in the Complaint In Intervention.  Although the intervenor defendants' Answers "demand a jury trial to determine some or all factual issues, as well as any non-equitable relief sought by or against" them, no party has cited any authority requiring or permitting a jury trial of an equitable claim pursuant to IOWA CODE § 630.16, a claim for declaratory judgment pursuant to 28 U.S.C. § 2201, *et seq*., or Stein's defense based on IOWA CODE § 684.8(1).  None of these statutes expressly authorizes a jury trial.  Also, the nature of the case and the relief sought are equitable rather than legal, where the Tribe seeks a lien, injunctive relief, and declaratory relief, and Stein seeks to prevent such relief on equitable grounds.  *See Dix v. Casey's Gen. Stores, Inc.*, 961 N.W.2d 671, 680 (Iowa 2021) ("'To determine a proceeding as legal or equitable, we look to the pleadings, relief sought, and nature of the case.'"  (quoting *Hedlund v. State*, 930 N.W.2d 707, 718 (Iowa 2019)).  Thus, the trial of the Tribe's claims and Stein's defense to them will be to the court.

In addition to objections to certain factual statements, some of which were based on evidentiary grounds, Stein filed Joint Evidentiary Objections By Defendants-In-

3

Intervention To Declarations Submitted With Tribe's Motion For Summary Judgment. Stein levels such objections at approximately half of the 92 paragraphs of the Tribe's counsel's declaration and approximately half of the 14 paragraphs of the declaration of the chairwoman of the Tribe's Tribal Council.  The court notes that many of Stein's objections to the declarations are to counsel's description of documents or their contents, or challenges to the chairwoman's personal knowledge of documents, but not to the admissibility of the documents themselves, which are found in the parties' Appendices.  For example, Stein objects to counsel's reference to the November 8, 2018, TENTATIVE DECISION; ORDERS of the California court as the "Compensatory Damages Award" on the ground that it is purportedly a misstatement of the record.  Considering the nature of the objections and the Tribe's responses to them, the court finds that the best course is to decide the Tribe's Motion For Summary Judgment on the basis of the exhibits submitted by the parties, which are not themselves challenged, and the statements in the form of deposition testimony and sworn declarations of persons who are parties and witnesses in this action to the extent such statements provide factual information rather than opinions, characterizations, or information outside of the declarants' or the witnesses' personal knowledge.

The court declines the parties' invitation to rule on each and every objection to the factual statements or to each paragraph of the declarations, lest this decision become nearly incomprehensible, overlong, and unbearably tedious.  The court has, instead, attempted to maintain the focus on potentially dispositive factual matters and factual disputes.

## B.    *Factual Background*

Few of the factual statements that follow are in precisely the form the parties offered them.  Instead, where possible, the court has limited or rephrased the parties' statements to avoid language that appears to the court to be the basis for an opposing party's objection. That language often characterizes the contents of documents or peoples' actions instead of objectively reporting them.  Nor has the court found it necessary to include every statement offered by the parties, whether disputed or undisputed, or actually a legal conclusion or a

4

legal argument. Thus, unless otherwise indicated, the facts that follow are undisputed—or cannot reasonably be disputed.

### 1.    The Tribe's lawsuit against Stein

On November 2, 2006, the Tribe sued Jonathan Stein, Law Offices of Jonathan Stein (Law Offices), and St. Monica Development Company, L.L.C. (St. Monica) in California state court alleging fifteen causes of action arising from a failed casino project. Nearly thirteen years later, on August 27, 2019, the Tribe obtained a judgment of $20,411,067.23 in compensatory damages and $7,000,000.00 in punitive damages (the Judgment) against Stein and an adjudication that Law Offices and St. Monica were Stein's alter egos. Only some of the parties' numerous submissions about that litigation require mention, here.

On November 8, 2018, prior to the entry of the Judgment, the California court entered a "TENTATIVE DECISION; ORDERS," in which, among other things, the court found in favor of the Tribe and against Stein, Law Offices, and St. Monica, jointly and severally, on the Tribe's first through sixth, ninth, eleventh, twelfth, and fifteenth causes of action and awarded damages in the amount of $20,411,067.23. Although this decision was identified as "tentative," the Minute Order that accompanied it stated, "The Court issues its Tentative Decision; Orders" and that "[t]he Court's ruling, filed and signed this date, is adopted as the final ruling of the Court and incorporated herein by reference to the case docket."

On December 5, 2018, in another Minute Order, in response to what the California state court construed as a Request for Statement of Decision, that court stated, "The court has not yet filed a Statement of Decision – the court's filing on November 8, 2018 was a Tentative Decision." The December 5, 2018, Minute Order did not set aside any part of the November 8, 2018, Tentative Decision or the part of the November 8, 2018, Minute Order adopting that Decision as the court's "final ruling." The December 5, 2018, Minute Order did direct the Tribe's counsel to file and serve a proposed Statement of Decision. The Statement of Decision, which was eventually filed by the court on August 27, 2019, the same day as the Judgment, reiterated the award of compensatory damages to the Tribe

in the amount of $20,411,067.23 and added an award of $7,000,000.00 in punitive damages to the Tribe and against Stein, Law Offices, and St. Monica, jointly and severally.

On November 5, 2019, the California court denied Stein's motion for a new trial. On November 8, 2019, Stein appealed but did not bond the Judgment. Stein has not paid any part of the Judgment, and he acknowledges that he is unable to do so because he does not have the means. Stein also acknowledges that he became insolvent on a balance sheet basis at the time the court entered the Judgment, but the parties dispute whether he was insolvent prior to that time. Stein admits only that he was "illiquid" in late 2018 and early 2019.

### 2. *Stein's assignments*

Stein's wife Hong Sun was not a party to the Tribe's action against Stein in California state court. In a declaration submitted to the summary judgment record, she admits, however, that she "was generally aware that Mr. Stein had legal issues with [the Tribe]," that she "understood that Mr. Stein had liquidity issues beginning in 2018," and that she "understood this to be a result of his ongoing litigation with the Tribe and also the litigation he was handling for Glenn Golden." She declares that she "never was told that, in November 2018, there was a tentative ruling against Mr. Stein in the amount of $21 million." She also declares, "To assist Mr. Stein, I lent him money so that he could maintain his law practice and his standard of living while managing the litigation with Mr. Golden," although "[a]t the time, I understood he was solvent as he still [had] substantial income as a lawyer."

Thus, on December 1, 2018—that is, after the California court's decision awarding the Tribe over $20 million in compensatory damages, but before the entry of the Judgment for compensatory and punitive damages—Stein and Hong Sun executed a written agreement whereby Stein purported to assign to his wife, in exchange for $440,000, 50% of his right, title, and interest in "Assigned Personal Property," identified as "(i) his claims and chose in action in the LASC Fee Litigation; (ii) his counterclaims and chose in action in the *Stein adv Golden* [sic]; (iii) his account receivable under the ACRA [Attorney-Client Retainer Agreement] and the Account Stated and Final Demand Letter; and (iv) his lien

6

rights under the Claim of Lien."   The court and the parties refer to this assignment as Assignment No. 1.

On December 14, 2018, less than two weeks after executing Assignment No. 1, Stein amended his Answer and Counterclaim in this action to allege, *inter alia*, that "Stein's beneficial rights . . . have been partially or wholly assigned to third parties," who "waive any challenge to the personal jurisdiction of this Court," while Stein alleged that he remained the "actual counterclaimant" in this action.   The Amended Answer did not reveal the third party or parties to whom the assignment had been made or any further details of the assignment.   One week after that, on December 21, 2018, Stein incorporated his "dba" Law Offices as "Law Offices of Jonathan Stein, P.C." (the P.C.).   Stein acknowledges that the P.C. is the successor in interest of his Law Offices beginning in 2019.

On February 1, 2019, Stein and Hong Sun executed another written agreement whereby Stein purported to assign to his wife "all of his right, title and interest in and to: (i) his remaining fifty percent (50.00%) of the Account Stated Amount of $880,825; and (ii) ninety-nine percent (99.00%) of the Assigned Choses in Action, to the extent of any amount realized beyond the Account Stated Amount of $880,825, all in return for" $460,000.   The court and the parties refer to this assignment as Assignment No. 2.

In a declaration dated September 10, 2020, Hong Sun averred, "The consideration I paid for the two assignments totals nine hundred thousand and no/100 dollars ($900,000), which is paid in cash and cancellations of indebtedness."   Stein contends that the Assignments did not change his net worth, because he simply traded illiquid assets for liquid assets.   Hong Sun declares, in the summary judgment proceedings, "I did this transaction in good faith to help Mr. Stein. I did not do the transaction to help Mr. Stein hinder or avoid paying the Tribe any amounts he might owe."   The Tribe disputes this statement.

The Tribe contends that Stein did not disclose the Assignments to the Tribe until September 3, 2020.   Stein counters that the existence of the Assignments was disclosed in his Counterclaim against Golden, but that occurred long before the Tribe became a party to this action, and that disclosure did not identify the assignee.   Stein also alleges that he

disclosed the details of the Assignments, including the name of the transferee, in response to discovery requests from Golden on December 30, 2019.  Stein asserts that the Assignments were also disclosed to the Tribe during two different depositions in debtor's examination proceedings in September 2020, but the Tribe did not ask follow-up questions. The Tribe contends, however, that Stein and Hong Sun did not produce the Assignments during these examinations, despite the Tribe's outstanding subpoenas to them from April 2020 demanding the production of, *inter alia*, (1) "all documents relating to transfers of assets" between the Steins; (2) "all documents relating to transfers of money" between the Steins; and (3) other related categories for production.  Stein denies that he had any duty to disclose the Assignments to the Tribe.  Stein admits that he provided copies of the Assignments to the Tribe on October 13, 2020, but he asserts that the Assignments had previously been disclosed and that the Tribe had never sought copies of them.

### 3.   *Relevant proceedings in Iowa state court*

On July 29, 2020, the Tribe filed its Affidavit of Foreign Judgment and Amount Owed in the Iowa District Court for Polk County, Case No. 05771 CVCV 060511, thereby registering the Tribe's Judgment in Iowa.  On July 31, 2020, the Iowa state court issued a Notice of Filing of Foreign Judgment.  Stein did not object to or resist the Tribe's domestication of the Judgment in Iowa.  The Tribe alleges that, on September 3, 2020, in the course of attempting to levy on the Federal Deposit and Stein's chose-in-action in this case, the Tribe first learned of the Assignments from Stein to Hong Sun.  Again, Stein contends that the Tribe learned of or should have known of the Assignments prior to that date for the reasons stated, above.

The Tribe alleges that neither Stein nor Hong Sun has produced any documents to substantiate their claim that Hong Sun paid anything for the Assignments, whether through bank statements, deposit slips, withdrawal receipts, declared income on tax returns, or otherwise, which the Steins do not deny.  Stein points out, however, that Dr. Meister, one of their experts, states, "In preparing this expert declaration, I reviewed the following documents: **** banking records from Jonathan Stein that correlate by date to the financial transfers and provide further evidence of their veracity."  The Tribe responds that

Dr. Meister's declaration speaks for itself, but the Tribe also points out that Stein and his experts have not produced a single "banking record" or a single document reflecting the cancellation of antecedent debt from January 2018 to the present in response to the Tribe's Motion for Summary Judgment.

The Tribe's attempts to levy upon the Federal Deposit and Stein's chose-in-action in this case were not successful after the Polk County Sheriff learned of the Assignments. Upon learning of the Assignments, the Sheriff required the Tribe to post a bond of $1,350,000, which the Tribe was unable to do. The Tribe's attempt to quash the bond requirement in Iowa state court proceedings failed. The Tribe then sought to intervene in this action.

### C.    Procedural Background

On October 16, 2020, the Tribe filed a Motion to Stay Trial and a Motion to Intervene in this action. That same day, this court held a telephonic hearing on both motions. On October 17, 2020, this court granted the Tribe's Motion to Stay Trial. On February 3, 2021, this court granted the Tribe's Motion to Intervene. The Tribe's Complaint In Intervention was filed on February 5, 2021.

The Tribe has called its First Claim For Relief "Equitable Fraud Pursuant to Iowa Code Section 630.16." This First Claim is against all intervenor defendants and asserts that, as a result of Stein's fraudulent assignments to Hong Sun, Hong Sun has or is in possession of personal property, money, rights, credits or interests belonging to Stein which can be used to satisfy, in part or in whole, the Tribe's Judgment. This claim alleges that, pursuant to IOWA CODE § 630.18, upon service of the Complaint In Intervention on Hong Sun, the Tribe is entitled to a lien on Stein's causes of action in this case and the Federal Deposit, which were wrongfully conveyed from Stein to Hong Sun, whether in the possession of Stein or Hong Sun. The primary basis for the Tribe's first cause of action is that Stein fraudulently conveyed his rights to the Federal Deposit and this lawsuit to Hong Sun through the two written Assignments to obstruct and evade the Tribe's levies on those assets. The Tribe has called its Second Claim For Relief "Declaratory Judgment and

Injunction (28 U.S.C. § 2201, et seq.)."  This Second Claim is also against all intervenor defendants and seeks six declarations and an injunction pursuant to 28 U.S.C. § 2201 *et seq*.  On May 27, 2021, this court denied the intervenor defendants' motions to dismiss with the exception of dismissing the Tribe's prayer for attorney's fees against Hong Sun. The intervenor defendants then filed their Answers on June 10, 2021.

This action is now before the court on the Tribe's July 8, 2021, Motion For Summary Judgment.  The intervenor defendants filed resistances, and the Tribe filed replies.  On October 12, 2021, after review of the parties' submissions concerning the Tribe's Motion For Summary Judgment, the court entered an Order [Dkt. No. 437] stating, in part,

> It boggles the mind that, where the claims and defenses in the intervenor action turn, at least in part, on whether Hong Sun paid anything for the assignments, and the value or dollar amount of whatever she paid, that the intervenor defendants have not provided via discovery and submitted to the summary judgment record a single document demonstrating that such a payment occurred and demonstrating the value or dollar amount of any such payment.

Consequently, the court held, "The Steins must now produce such records and information, so that the court can make an appropriate disposition of the Tribe's Motion For Summary Judgment."  Specifically, the court ordered that "the intervenor defendants shall produce to the Tribe any and all bank statements, deposit slips, withdrawal receipts, tax returns, loan agreements or other memorializations for the purported antecedent debt, ledgers, letters, emails, and any other record or memorialization of any kind of any payments or transfers of property for the assets at issue in the assignments, including memorialization of any cancellation of purported antecedent debt" by a specified deadline.  The court also set a deadline by which the Tribe would be permitted to file any supplement or amendment of its Motion For Summary Judgment and, if it did, a deadline for the intervenor defendants to respond and the Tribe to file any reply.

On October 19, 2021, the Steins filed their Joint Supplemental Appendix Of Documents In Support Of All Intervenor Defendants' Response To Tribe MSJ [Dkt. No.

439] in response to the court's October 12, 2021, Order.  On November 2, 2021, the Tribe filed its Supplemental Brief [Dkt. No. 440].  After various delays and extensions, Hong Sun filed her Response To Tribe's Supplemental Brief [Dkt. No. 458] on January 31, 2022, stating that Stein joined in her Response.   On February 4, 2022, the Tribe filed its Supplemental Reply Brief [Dkt. No. 459].   Thus, the Tribe's Motion For Summary Judgment is now fully submitted.

## II.    LEGAL ANALYSIS

### A.    Obfuscating Arguments

As has too often been the case in rulings in this litigation, the court must address, at least briefly, several arguments by the various intervenor defendants that the court concludes obfuscate rather than clarify the proper basis for disposition of the Tribe's Motion.  Examples follow.

The first such argument is Hong Sun's contention that she owns her percentage share of the right, title, and interest in amounts claimed under the Stein Fee Agreement and in the Counterclaim and that she is the owner of Stein's inchoate and unresolved claims to the Federal Deposit as asserted in the Counterclaim as part of the chose-in-action.  Second, Hong Sun argues that she owns her percentage share of the Golden chose-in-action and the Federal Deposit as her separate property under California community property laws by virtue of a Prenuptial Agreement with Stein, with a corollary argument that the Prenuptial Agreement is beyond the applicable statute of repose.   Third, she argues that the assignments to her have placed her right to the property at issue "first in time, first in right" under Iowa and California law.  None of these arguments are of any moment, however, if the Assignments to Hong Sun were fraudulent, that is, if notwithstanding the Assignments, the property at issue "belongs" to Stein, and Hong Sun is merely "holding" that property as the result of a fraudulent conveyance.  See IOWA CODE § 630.16.

Likewise irrelevant is Hong Sun's argument that she is not in "possession" of either the Federal Deposit (she contends the court is) or the Golden chose-in-action because her rights in that property remain inchoate and unresolved.  IOWA CODE § 630.16 does not

11

relate solely to physical possession of tangible property.  It relates, as well, to "any property, money, *rights*, credits, or *interest* therein belonging to the defendant"—here, Stein.  *Id.* (emphasis added).  By virtue of the allegedly fraudulent Assignments, Hong Sun purports to be a person "holding" such property in which Stein has rights or interests.  *Id.*

Next, Hong Sun argues that Stein may prefer her, as a creditor, over the Tribe, when paying antecedent debt, even if she is an insider.  Again, that would be the case unless the cancellation of the antecedent debt is part of a fraudulent conveyance, because in that case, the property at issue "belongs" to Stein, and Hong Sun is merely improperly "holding" that property.  *See* IOWA CODE § 630.16.  The Iowa Supreme Court has recognized,

> Under Iowa law a debtor may prefer one creditor over another even if the debtor's intentions toward the nonpreferred creditor are spiteful and the action will delay or prevent the nonpreferred creditor from obtaining payment. *First State Bank v. Kalkwarf*, 495 N.W.2d at 712; *Production Credit Ass'n*, 485 N.W.2d at 472. *A debtor husband may not, however, at the same time accomplish a transfer without consideration to his wife to the frustration of his creditors.*

*Benson v. Richardson*, 537 N.W.2d 748, 760 (Iowa 1995) (emphasis added).  Hence, if the Assignment between spouses is fraudulent, in that it was not given for any consideration—or, the court concludes, was not given for reasonably equivalent value—the ability to prefer one creditor over another is inapplicable.  Hong Sun's argument also fails, if she is not a "creditor" of Stein, which would be the case if the evidence does not support her contention that she paid for the Assignments, at least in part, with antecedent debt Stein owed her.

Last but not least, Hong Sun points to what she calls the Tribe's "in lieu" arguments, that is, arguments in lieu of facts showing fraudulent conveyance.  She gives as examples arguments that point out alleged prior misconduct by Stein.  What is relevant, of course, is whether the Assignments to Hong Sun were fraudulent, which depends, in part, on whether Hong Sun acted in "good faith."  Stein's alleged prior misconduct, standing alone, does not defeat Hong Sun's "good faith," but some instances of his alleged prior misconduct and whether Hong Sun knew about it or participated in it may be relevant to her "good faith."

The most misleading of Stein's arguments is his contention that IOWA CODE § 642.21 exempts "earnings" for "personal services" and allows levy only upon 10% of "disposable earnings."  Stein contends that his "earnings" under the Stein Fee Agreement are for "personal services," even if he has to collect those fees by obtaining a judgment on his Counterclaims.  However, § 642.21 is irrelevant, here, because it relates to garnishment of a debtor's earnings from the debtor's employer.  *See* IOWA CODE § 642.21(1) (establishing "[t]he maximum amount of an employee's earnings which may be garnished during any one calendar year . . . for each judgment creditor").  There is no allegation in the record that the basis for recovery of the assigned property from Hong Sun is that Stein is Hong Sun's employee and that the property represents his "earnings" from personal services to her.  Stein also attempts to reassert a dispute about who is the "real" Tribe, which was resolved in the California litigation and which this court has repeatedly refused to reconsider.

The P.C. and St. Monica have also asserted obfuscating arguments.  The one that the court will mention is that the Tribe's Statement of Facts contains no allegations that the P.C. and St. Monica possess any property belonging to Stein.  Like Stein's reassertion of questions about the identity of the Tribe, this argument appears to be an attempt to relitigate matters resolved in the California litigation.  This is so, because the California court held, *inter alia*, that Law Offices of Jonathan Stein (Stein's "dba") and St. Monica are Stein's "alter egos."  Stein now admits that the P.C. is the wholly owned successor of judgment debtor Law Offices of Jonathan Stein.  Thus, the property at issue belongs to the P.C. and St. Monica as Stein's alter egos to the extent that it belongs to Stein.

This is a sampling of the various intervenor defendants' obfuscating and irrelevant arguments raised in the briefing of the Tribe's Motion For Summary Judgment.  The court will not address all such arguments, however.  Rather, the court will turn now to the potentially dispositive issues.  Those issues relate to the elements of the Tribe's cause of action and Stein's defense based on "good faith" and "reasonably equivalent value."

Before considering those issues, however, the court will set out the standards for summary judgment.

### B.    Standards For Summary Judgment

Rule 56 of the Federal Rules of Civil Procedure provides that "[a] party may move for summary judgment, identifying each claim or defense—or part of each claim or defense—on which summary judgment is sought." FED. R. CIV. P. 56(a).  It provides, further, that a "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Id*.  Summary judgment decisions usually focus on whether the non-moving party has generated a genuine issue of material fact precluding entry of judgment as a matter of law.  *See, e.g., Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc).  As mentioned, above, "'[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted.'"  *Villanueva*, 779 F.3d at 510 (quoting *Anderson*, 477 U.S. at 248).

The Tribe asserted in response to some of Stein's statements of fact that "[t]he Court can make credibility determinations on a Motion for Summary Judgment."  The Tribe cited no authority for that proposition, and the court has found none.  Indeed, Eighth Circuit law is clear:   "A court at this stage 'does not weigh the evidence, make credibility determinations, or attempt to discern the truth of any factual issue' but focuses on whether there are genuine disputes of material fact for trial."  *Walz v. Randall*, 2 F.4th 1091, 1099 (8th Cir. 2021) (quoting *Morris v. City of Chillicothe*, 512 F.3d 1013, 1018 (8th Cir. 2008)). Thus, the court may grant summary judgment only "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party."  *Torgerson*, 643 F.3d at 1042-43 (internal quotation marks and citations omitted).  Similarly, as the United States Supreme Court has explained, "[A] 'judge's function' at summary judgment is not 'to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.'"  *Tolan v. Cotton*, 572 U.S. 650, 656 (2014) (per curiam) (quoting *Anderson*, 477 U.S. at 249).  It is "axiom[atic] that in ruling on a motion for summary judgment, '[t]he evidence of the nonmovant is to be believed, and all justifiable

inferences are to be drawn in his favor.'" *Id*. at 651 (second alteration in original) (quoting *Anderson*, 477 U.S. at 255). This can be a bitter pill for the movant (and sometimes the court) to swallow.

### C.    The Equitable Claim

The Tribe seeks summary judgment on its first claim, entitled "Equitable Fraud Pursuant to Iowa Code Section 630.16." Stein resists summary judgment on this claim on the ground that there are genuine issues of material fact on both the Tribe's claim and his defense to it.

#### 1.    Summary judgment on the claim

The Tribe argues that the record shows beyond dispute that it has satisfied the elements of an equitable claim based on § 630.16. It argues that it is a judgment creditor of Stein; Stein and Hong Sun are in possession of Stein's rights to the Federal Deposit and the Golden Litigation; and the Tribe may levy on Stein's rights to the Federal Deposit and the Golden Litigation, whether those rights are in Stein's hands, Hong Sun's, or any other individual's or entity's, such as St. Monica or the P.C. The Tribe explains that the basis for this claim is that Stein fraudulently conveyed his rights to the Federal Deposit and the Golden Litigation to his wife, as demonstrated by consideration of the "badges of fraud" set out in IOWA CODE § 684.4(2) in light of the undisputed facts. Stein argues that he has generated genuine issues of material fact on several of the Tribe's "badges of fraud." He also argues that the Tribe's Motion improperly invites the court to weigh the evidence.

##### a.    Applicable law

IOWA CODE § 630.16 provides for an equitable proceeding by a judgment creditor as follows:

> At any time after the rendition of a judgment, an action by equitable proceedings may be brought to subject any property, money, rights, credits, or interest therein belonging to the defendant to the satisfaction of such judgment. In such action, persons indebted to the judgment debtor, or holding any property or money in which such debtor has any interest, or the evidences of securities for the same, may be made defendants.

15

The Iowa Supreme Court has explained that "the section furnishes means auxiliary to execution by which a creditor may uncover property in which the debtor still holds an interest," and describes it as providing for a "creditor's bill." *Powell v. Grewing*, 562 N.W.2d 761, 763 (Iowa 1997) (citing *Jensen v. Booth Motor Co.*, 234 Iowa 694, 695, 13 N.W.2d 681, 681–82 (1944)).  The provision will allow a judgment creditor to recover a debtor's property, for example, where a debtor engages in a fraudulent conveyance. *See Benson v. Richardson*, 537 N.W.2d 748, 756 (Iowa 1995).

Stein does not appear to dispute that the Tribe has met the first requirement of § 630.16, where the Tribe has been rendered a judgment by the California court awarding the Tribe more than $28 million in actual and punitive damages against Stein, his Law Offices, and St. Monica.  IOWA CODE § 630.16.  Stein argues that the other requirements of § 630.16 are not satisfied beyond dispute, however.  Specifically, he asserts that there are factual disputes about whether, despite the Assignments from Stein to Hong Sun, the property at issue still "belongs" in its entirety to Stein, such that Hong Sun is merely "holding" property in which Stein has an interest. *Id.*  The answer to that question turns on whether the Assignments were fraudulent. *Benson*, 537 N.W.2d at 756.

As the Iowa Supreme Court explained in *Benson*,

> A fraudulent conveyance is a "transaction by means of which the owner of real or personal property has sought to place the land or goods beyond the reach of his creditors, or which operates to the prejudice of their legal or equitable rights." *Production Credit Ass'n v. Shirley*, 485 N.W.2d 469, 472 (Iowa 1992) (quoting *Graham v. Henry*, 456 N.W.2d 364, 366 (Iowa 1990)); *Generic Farms v. Stensland*, 518 N.W.2d 800, 802 (Iowa App. 1994). The doctrine of fraudulent conveyances advances the principle that a debtor's property constitutes a fund from which the debtor's obligations should be paid and the debtor may not frustrate a creditor's right to obtain satisfaction from the fund. *Graham*, 456 N.W.2d at 366. When a debtor disposes of property with the intent to delay or defraud creditors, we deem the disposition inequitable and will set it aside. *Id*.

*Benson*, 537 N.W.2d at 756.

In *Benson*, the Iowa Supreme Court also explained,

> In Iowa, a party asserting fraud must establish its existence by clear and convincing evidence and demonstrate the fraud has caused him or her prejudice. *Production Credit Ass'n*, 485 N.W.2d at 472; *Graham*, 456 N.W.2d at 366; *Generic Farms*, 518 N.W.2d at 803. *When determining whether a transaction constitutes a fraudulent conveyance, we look for a number of badges or indicia of fraud: inadequacy of consideration, insolvency of the transferor, pendency or threat of third-party creditor litigation, secrecy or concealment, departure from the usual method of business, any reservation of benefit to the transferor, and the retention by the debtor of possession of the property.* Production Credit Ass'n, 485 N.W.2d at 472; *Graham*, 456 N.W.2d at 366; *Generic Farms*, 518 N.W.2d at 802–03; *Muehlenthaler v. DeBartolo*, 347 N.W.2d 688, 690 (Iowa App.1984). *The existence of a "blood relationship" is not a per se indication of fraud, but its existence strengthens the inference of a fraudulent conveyance and we will apply close scrutiny to such a transaction. Production Credit Ass'n*, 485 N.W.2d at 472; *Graham*, 456 N.W.2d at 366; *Price v. Scharpff*, 220 Iowa 125, 128, 261 N.W. 511, 512 (1935); *Muehlenthaler*, 347 N.W.2d at 690; *see also First Nat'l Bank v. Frescoln Farms, Ltd.*, 430 N.W.2d 432, 435–36 (Iowa 1988) (transactions between a parent and child will be closely scrutinized). When analyzing a transfer between relatives, we look for strict proof of the existence of consideration and the fairness of the transaction. *Graham*, 456 N.W.2d at 366.

*Benson*, 537 N.W.2d at 756; *see also Ralfs v. Mowry*, 586 N.W.2d 369, 373 (Iowa 1998) (pointing to the same "badges of fraud" as indicating a fraudulent conveyance).

Instead of relying on this case law explanation of fraudulent conveyance and the "badges of fraud" in relation to a § 630.16 equitable proceeding, the Tribe contends that the Assignments were fraudulent under IOWA CODE § 684.4, which identifies similar factors as relevant to the determination. That statutory provision states, in pertinent part,

> 1. A transfer made or obligation incurred by a debtor is voidable as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was

incurred, if the debtor made the transfer or incurred the
obligation under any of the following circumstances:

a. With actual intent to hinder, delay, or defraud any creditor
of the debtor.

IOWA CODE § 684.4(1)(a); *and compare Benson*, 537 N.W.2d at 756 ("When a debtor

disposes of property with the intent to delay or defraud creditors, we deem the disposition

inequitable and will set it aside.").

IOWA CODE § 684.4(2), in turn, states

2. In determining actual intent under subsection 1, paragraph
"a", consideration may be given, among other factors, to
whether any or all of the following apply:

a. The transfer or obligation was to an insider.

b. The debtor retained possession or control of the property
transferred after the transfer.

c. The transfer or obligation was disclosed or concealed.

d. Before the transfer was made or obligation was incurred, the
debtor had been sued or threatened with suit.

e. The transfer was of substantially all the debtor's assets.

f. The debtor absconded.

g. The debtor removed or concealed assets.

h. The value of the consideration received by the debtor was
reasonably equivalent to the value of the asset transferred or
the amount of the obligation incurred.

i. The debtor was insolvent or became insolvent shortly after
the transfer was made or the obligation was incurred.

j. The transfer occurred shortly before or shortly after a
substantial debt was incurred.

k. The debtor transferred the essential assets of the business to
a lienor that transferred the assets to an insider of the debtor.

The Iowa Supreme Court has described this statutory provision as identifying "additional factors"—beyond those identified in case law—to decide whether a conveyance was fraudulent. *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Ouderkirk*, 845 N.W.2d 31, 47 (Iowa 2014) (comparing the list in *Ralfs*, 586 N.W.2d at 373, with the statutory list).

### b.     Discussion

The court concludes that an equitable claim based on fraudulent conveyance is ill-suited to disposition by summary judgment. This is so, because the Iowa Supreme Court refers to "badges of fraud" that courts "look for" when determining whether a transaction constitutes a fraudulent conveyance. *Benson*, 537 N.W.2d at 756. Likewise, § 684.4(2) identifies factors that the court "may consider," "among others," to determine whether a conveyance is fraudulent. Determinations made on the basis of non-exclusive lists of factors necessarily imply some weighing of the evidence supporting those factors and some weighing of the factors against each other. These are determinations that the court cannot properly make at summary judgment. *Tolan*, 572 U.S. at 656; *Walz*, 2 F.4th at 1099.

Nevertheless, Rule 56 also permits the court to grant summary judgment on "part of each claim or defense," as well as on claims or defenses in their entirety. FED. R. CIV. P. 56(a). Therefore, the court will consider whether there are genuine issues of material fact on each of the pertinent "badges of fraud" asserted by the Tribe.

Stein admits two of the "badges of fraud" on which the Tribe relies:  (1) that Assignment No. 1 and Assignment No. 2 were by Stein to an insider, his wife, Hong Sun, *see* IOWA CODE § 684.4(2)(a); and that the Tribe sued Stein in the California Action before Stein and Hong Sun executed Assignment No. 1 and Assignment No. 2, *see* IOWA CODE § 684.4(2)(d). As to the first admission, the court concludes that the "insider" relationship between a husband and a wife involved in the transaction, like that between blood relatives, will ultimately require the court's "close scrutiny" and "strict proof of the existence of consideration and the fairness of the transaction." *Benson*, 537 N.W.2d at 756. Such "close scrutiny" is not appropriate at summary judgment, because it implies some weighing the evidence, including the evidence of consideration and the fairness of the transaction, which is inappropriate at summary judgment. *Tolan*, 572 U.S. at 656; *Walz*, 2 F.4th at 1099.

Stein expressly disputes the other "badges" on which the Tribe relies.  The Tribe argues that there is no dispute that Stein retained possession and control of the subject assets after purportedly assigning them to his wife or that Stein remained the "actual counterclaimant" in this action and vigorously litigated his claims against Golden as if there were no assignments at all.  *See* IOWA CODE § 684.4(2)(b).  Stein responds that § 1.3(b) of Assignment No. 2 states that he remains the nominal and actual party in this action and both Assignments obligate him to litigate on Hong Sun's behalf and to pay the costs of litigation.  Stein's argument establishes rather than disputes that Stein retained possession and control of the property at issue, even after the Assignments.  No reasonable factfinder could conclude otherwise, so this "badge of fraud" is established as a matter of law.  *Torgerson*, 643 F.3d at 1042-43.

The Tribe argues that there is no genuine dispute that Stein concealed the assignments and his assets from the Tribe, IOWA CODE §§ 684.4(2)(c), (2)(g), while Stein contends that there are genuine issues of material fact on these "badges" for the reasons set out, above, on page 7.  The court concludes that Stein has generated genuine issues of material fact on these "badges" based on his identification of specific evidence that may suggest he timely disclosed at least the existence of the Assignments and submitted to a debtor's examination to disclose his assets.  A reasonable factfinder could certainly conclude that Stein did not timely or adequately disclose the Assignments, and was under some obligation to do so, but the court cannot say with certainty that no reasonable factfinder could find that Stein disclosed the existence of the Assignments and his assets, particularly where the court must grant all reasonable inferences to Stein as the non-moving party.  *Torgerson*, 643 F.3d at 1042-43.  Thus, this "badge" is not established beyond dispute.

The Tribe also argues that there is no genuine dispute that the Assignments were for substantially all Stein's assets, *see* IOWA CODE § 684.4(2)(e), as established by Hong Sun's admissions in her brief in support of her motion to dismiss the Complaint in Intervention.  *See* Pl.'s Appx. [Dkt. No. 387-3], 231-32.  Stein counters that the Tribe has not presented any facts concerning his assets or net worth on the date of the Assignments, that is,

December 2018 and February 2019.  He also argues that the Assignments did not affect his net worth, because he simply exchanged illiquid assets for liquid ones.  An assignment must necessarily transfer an asset, so whether the exchange was for reasonably equivalent value or exchanged illiquid for liquid assets does not generate a genuine issue of material fact on whether the assignment involved substantially all the assignor's assets.  The question is whether the assignor had any *other* assets.  *See* IOWA CODE § 684.4(2)(e) (stating this factor as, "The transfer was of substantially all the debtor's assets.").

The Tribe has pointed to evidence that Stein was in "financial difficulties," had no immediate source of cash, and needed cash to finance his lawsuit against Golden, to maintain his law practice, and to maintain his "lifestyle."  That is sufficient to satisfy the Tribe's burden at summary judgment of identifying the portions of the record that the Tribe believes demonstrate the absence of a genuine issue of material fact on this "badge." *Mensie v. City of Little Rock*, 917 F.3d 685, 688 (8th Cir. 2019).  Stein has not met his burden to submit evidentiary materials that set out specific facts showing that he had other assets.  *Id.*  He declares that he had other assets consisting of his income from work with two law firms and for his own clients and substantial retirement funds in the law firm's pension fund, but he points to no evidence demonstrating actual net worth, actual payment of income, or the amount of any retirement savings.  "'[I]t is black letter summary judgment law that a conclusory, self-serving affidavit will not defeat an otherwise meritorious summary judgment motion.'"  *Smith v. Golden China of Red Wing, Inc.*, 987 F.3d 1205, 1209 (8th Cir. 2021) (quoting *Keiran v. Home Cap., Inc.*, 858 F.3d 1127, 1132 (8th Cir. 2017)).  Stein's statements in his declaration about his net worth, income, and retirement savings are such conclusory, self-serving statements.  No reasonable fact finder could conclude otherwise.  *Torgerson*, 643 F.3d at 1042-43.  This "badge of fraud" is established as a matter of law.

The Tribe asserts that there is no genuine dispute as to the "badge of fraud" from the assignor's insolvency or becoming insolvent, at the time of the Assignment.  *See* IOWA CODE § 684.4(2)(i).  The Tribe points to the express language of Assignments No. 1 and 2; the sheer size of the $20 million compensatory damages award against Stein; Stein's

inability to bond the Judgment; and Steins' recent judicial admissions of his depleted financial status and "meager holdings" at the relevant times. Stein responds that he had a positive net worth, income from law firms, and substantial retirement assets. He also argues that the Assignments did not affect his net worth and that the compensatory damages award had not been reduced to judgment at the time of the Assignments.

For much the same reasons Stein failed to demonstrate that the Assignments were not for substantially all of his assets, Stein has not met his burden to submit evidentiary materials that set out specific facts showing that he had any other assets, so that he was not "insolvent." *Mensie*, 917 F.3d at 688. Again, Stein's statements in his declaration about his net worth, income, and retirement savings are conclusory, self-serving statements, because he points to no evidence demonstrating actual net worth, actual payment of income, or the amount of any retirement savings. *Smith*, 987 F.3d at 1209. This court has held that the compensatory damages award shortly before the Assignments was "final" and, at the very least, it represents a sizeable claim against Stein. For purposes of determining whether a conveyance was fraudulent, "[u]nder Iowa law, an individual debtor is insolvent 'if the sum of the debtor's debts is greater than all of the debtor's assets at fair valuation.'" *Benson*, 537 N.W.2d at 757 (quoting *First Nat'l Bank v. Frescoln Farms, Ltd.*, 430 N.W.2d 432, 436 (Iowa 1988), in turn quoting Uniform Fraudulent Transfer Act § 2(a) (1984)); *see also* Iowa Code § 684.2(1) ("A debtor is insolvent if, at a fair valuation, the sum of the debtor's debts is greater than the sum of the debtor's assets."). Stein offers no evidence that is not conclusory or self-serving that would permit any determination of his financial condition at the time of the Assignments to set off his assets and income against his debts, where his debts include the $20 million compensatory damages award against him. No reasonable factfinder could find that Stein was solvent at the time of the Assignments. *Torgerson*, 643 F.3d at 1042-43. This "badge of fraud" is established as a matter of law.

Next, the Tribe argues that there is no genuine issue of material fact that the Assignments occurred shortly before Stein incurred a substantial debt in the form of the Judgment. *See* Iowa Code § 684.4(2)(j). Stein responds that there is a genuine dispute, if not a failure of proof, on this "badge," because the Tribe did not obtain the Judgment

22

until 6 and 8 months after the Assignments, respectively. Several months between the Assignments and the Judgment might weigh more heavily in Stein's favor, if the final compensatory damage award had not occurred *before* the Assignments, making the Judgment inevitable. Suffice it to say that the Tribe has met its burden to point to evidence of relative proximity of the events to suggest the "badge" is proved. *See Mensie*, 917 F.3d at 688 (explaining the burdens of proof at summary judgment). Although a reasonable factfinder could certainly conclude that Stein has not demonstrated the lack of proximity between the Assignments and incurring a substantial debt, a reasonable factfinder, granting Stein all reasonable inferences from the record evidence, could also conclude the contrary. *Torgerson*, 643 F.3d at 1042-43. Thus, this "badge" is not established beyond dispute.

The last "badge" the Tribe relies on is that there is no genuine dispute that Stein did not receive reasonably equivalent value in exchange for his purported Assignments to his wife. *See* Iowa Code § 684.4(2)(h). The court concludes that this "badge" is better addressed in the context of Stein's defense, because "reasonably equivalent value" is an element of that defense.

The court concludes that, because there are genuine issues of material fact on some of the "badges of fraud," there are genuine issues of material fact on the Tribe's equitable claim of fraudulent conveyances. Summary judgment on the claim is not appropriate.

### 2. *Summary judgment on the affirmative defense*

The centerpiece of Stein's response to the Tribe's Motion For Summary Judgment is that he has generated genuine issues of material fact on the elements of an affirmative defense afforded by IOWA CODE § 684.8(1). As a general matter, Stein points out that both requirements of this defense are questions of fact, but the Tribe's Motion improperly invites the court to weigh the evidence.

As set out, above, at page 17, IOWA CODE § 684.4(1)(a) provides that a transfer by a debtor may be "voidable" if the debtor made the transfer "[w]ith actual intent to hinder, delay, or defraud any creditor of the debtor." Section 684.8(1) provides, in turn, "A transfer or obligation is not voidable under section 684.4, subsection 1, paragraph 'a', against a person that [1] took in good faith and [2] for a reasonably equivalent value given the debtor

23

or against any subsequent transferee or obligee." IOWA CODE § 684.8(1) (bracketed numbers added). The court will consider the two elements of the § 684.8(1) defense in turn. The parties' arguments concerning "good faith" are found in their original briefing, while their key arguments concerning "reasonably equivalent value" are found in their supplemental briefing after the court required Stein to make additional disclosures.

### a.   *Good faith*

Hong Sun takes the laboring oar on arguments concerning her "good faith" in taking the Assignments from Stein. She declares her "good faith," arguing that she agreed to exchange Stein's illiquid assets at issue here for liquid assets, in the form of forgiveness of Stein's antecedent debt to her and payments that would total $900,000. Indeed, she avers that the notice of the Assignments was added to Stein's Counterclaim against Golden at her insistence. She avers that she understood Stein valued his lawsuit as a $500,000 asset, not a liability, and that she did not know the California court had already entered a final compensatory damages award of over $20 million against Stein, so she did not know that the Assignments might "postpone or defeat" the Tribe's attempt to collect a future judgment or any other reason to believe the Assignments were fraudulent. Although she was concerned when the California action resulted in a Judgment against Stein, Hong Sun maintains that Stein assured her that the Judgment could be vacated, so she continued to make payments through September 2020 exceeding $640,000 and that she has made more payments since. She also argues that she did not believe that Stein was insolvent at the time of the Assignments.

The Tribe responds that Hong Sun's "evidence" of "good faith" is a self-serving declaration, which is insufficient to defeat summary judgment. Further, the Tribe argues that, as to a "subjective" standard of good faith, Hong Sun avers that she knew her husband "had liquidity issues beginning in 2018" as "a result of his ongoing litigation with the Tribe," and that she had actual knowledge of the Tribe's $20 million claim "beginning in 2018." The Tribe argues that, despite that knowledge, Hong Sun proceeded to "help Mr. Stein" by receiving assets that she valued at $900,000, in late 2018 (Assignment 1) and the beginning of 2019 (Assignment 2)—in the middle of the trial in the California action—

which is circumstantial evidence that she did not act honestly.  The Tribe argues that, under an "objective" standard of "good faith," Hong Sun was on inquiry notice of Stein's possible insolvency, because she knew of the Tribe's $20 million claim against him, but she abetted him in his attempt to place his assets out of reach of Tribe by taking the Assignments.

Hong Sun argues that she was a preferred creditor because part of the consideration for the Assignments was satisfaction of Stein's antecedent debt to her.  In the context of whether an allegedly fraudulent conveyance to a preferred creditor was in "good faith," the court examines whether "the creditor acts in good faith to protect its own interest, and does not accept the conveyance with the purpose of aiding a debtor's fraudulent motives." *Garton v. Garton*, 533 N.W.2d 828, 832 (Iowa 1995) (citing *Production Credit Ass'n of Midlands v. Shirley*, 485 N.W.2d 469, 472 (Iowa 1992), and *Rouse v. Rouse*, 174 N.W.2d 660, 668 (Iowa 1970)); *First State Bank, Belmond v. Kalkwarf*, 495 N.W.2d 708, 712 (Iowa 1993).  To put it another way, a transferee does not act in "good faith," if the transferee participates in the transferor's fraud.  *Shirley*, 485 N.W.2d at 474 (citing IOWA CODE § 554.1201(19) (now § 554.1201(t)) as defining "good faith" to mean "honesty in fact in the conduct or transaction concerned").  Furthermore, "[e]ach claim of fraudulent conveyance must be decided upon its own peculiar facts" and "[t]he decision must be informed by a review of all the circumstances surrounding the transaction." *Garton*, 533 N.W.2d at 832.  Finally, fraud is rarely committed openly, and as a result, "direct evidence of it is rarely obtainable; fraud may, and usually must be proved by circumstantial evidence." *Shirley*, 485 N.W.2d at 472.

It may be difficult for a reasonable factfinder to accept Hong Sun's declaration of "good faith" in the face of evidence that should have suggested to her that Stein was already insolvent—such as evidence that he had been borrowing from her to support his lifestyle and business for at least several months prior to the Assignments—as well her declarations that she was not attempting to help Stein hide assets from creditors—when she knew that Stein was in extended litigation with the Tribe in which the Tribe's claims were for millions of dollars. *See Shirley*, 485 N.W.2d at 474.  Where an issue involves a matter of concrete fact—such as what assets a person has—it is certainly true that a conclusory, self-serving

affidavit, which is the only evidence of "good faith" Hong Sun offers, will not defeat an otherwise meritorious summary judgment motion. *Smith*, 987 F.3d at 1209. On the other hand, where the matter at issue, here, is what Hong Sun knew or did not know, what she did or did not believe or intend, and her motive, her declaration is perhaps worthy of rather more consideration at summary judgment. This is so, because what weight to give the declaration is a matter of credibility that belongs to the factfinder, which is better addressed at trial. *Walz*, 2 F.4th at 1099 ("A court at this [summary judgment] stage 'does not weigh the evidence, make credibility determinations, or attempt to discern the truth of any factual issue' but focuses on whether there are genuine disputes of material fact for trial."); *accord Tolan*, 572 U.S. at 656.

Considering the nature of the factual issue and the record evidence of the circumstances, and giving Hong Sun all reasonable inferences from the evidence because she is the non-moving party, the court concludes that a reasonable factfinder could find that Hong Sun acted in good faith. *Garton*, 533 N.W.2d at 832 (explaining that "[e]ach claim of fraudulent conveyance must be decided upon its own peculiar facts" and "[t]he decision must be informed by a review of all the circumstances surrounding the transaction"). Therefore, summary judgment on this element of the defense is not appropriate. *Torgerson*, 643 F.3d at 1042-43.

### b.      *Reasonably equivalent value*

As mentioned, above, the "reasonably equivalent value" element of the § 684.8(1) defense to a claim of fraudulent conveyance is the fighting issue of the parties' supplemental briefing after the court ordered Stein to make additional disclosures.[1] On this issue, the Tribe argues that Stein fails to include in the entire 362-page supplemental disclosure a single document substantiating that Hong Sun made any purported payment

---

[1] In this part of the decision, the court will again refer to the intervenor defendants as "Stein." Hong Sun filed a Response To Tribe's Supplemental Brief [Dkt. No. 458], but she represents that Stein joins in her Response, while she argues that the Law Offices and St. Monica need not respond, because the Tribe's supplemental brief presents no evidence against them. Thus, there is clearly a unity of interest on this point between Stein and Hong Sun and between Stein and the two business entities, which are his alter egos.

with her own money, and instead, Stein offers only Hong Sun's vague statements that she kept proceeds of her business activities in the United States, China, and Canada in cash.[2] The Tribe argues that the so-called "Yellow Pages" in Stein's supplemental disclosure, which are the method that Stein and Hong Sun purportedly used to keep track of transactions between them, are self-serving and internally contradictory.  Indeed, the Tribe argues that it and any factfinder should seriously question the veracity of these documents. Finally, the Tribe asserts that the entirety of the supplemental disclosure falls well short of demonstrating that the Assignments were for "reasonably equivalent value."

Stein argues that the Tribe is asking the court to make credibility determinations that are inappropriate at summary judgment, including such determinations regarding Hong Sun's cash business practices and the manner in which Hong Sun and Stein handle and record monetary transactions between them.  He also argues that the transaction and bank records produced are sufficient to generate genuine issues of material fact on the "reasonably equivalent value" element.  Somewhat more specifically, he argues that the "Yellow Pages" and a spreadsheet are open account entries evidencing actual payments by Hong Sun to Stein toward the $900,000 purchase price for the Assignments, including evidence of cancellation of Stein's debt to Hong Sun; payment of third parties on Stein's behalf; payment of legal expenses for Hong Sun for which Stein is responsible under the terms of the Assignments; and an October 2021 payment of $88,000 directly to Stein.

In reply, in addition to reiterating and clarifying the problems with Stein's supplemental disclosures, the Tribe argues that Hong Sun's purported cancellation of $381,101 is voidable under IOWA CODE § 684.5(2).

One provision of the Iowa Code that is relevant here states, in pertinent part, "Value is given for a transfer or an obligation if, in exchange for the transfer or obligation, property

---

[2] The Tribe also contends that 87% of Stein's supplemental disclosure should have been produced in response to the Tribe's prior requests.  The court concludes that a failure to make the disclosures sooner, even if they fell within the Tribe's prior requests, while certainly not to be condoned if true, does not warrant the severe sanction of barring Stein from presenting a "reasonably equivalent value" defense.

is transferred or an antecedent debt is secured or satisfied." IOWA CODE § 684.3(1) (emphasis added). Although this statute indicates that "value" for a transfer includes property and satisfaction of antecedent debt, it does not define "reasonably equivalent value."

The parties have not cited, and the court has not found, any Iowa statutory provision or Iowa case law specifically defining "reasonably equivalent value." Thus, it follows that the court must rely on the ordinary meaning of the term. *See State v. Zacarias*, 958 N.W.2d 573, 582 (Iowa 2021) ("If the legislature has not defined a word or use[d] it with an established meaning, we give the words their ordinary and common meaning by considering the context within which they are used." (internal quotation marks and citations omitted)). This court has noted, in a prior decision, that a provision of the Federal Debt Collection Procedures Act (FDCPA), like IOWA CODE § 684.8(1), "provides a defense to 'a person who took in good faith and for a reasonably equivalent value.'" *United States v. Schippers*, 982 F. Supp. 2d 948, 973 (S.D. Iowa 2013) (quoting 28 U.S.C. § 3307(a)). This court also noted that the Fifth Circuit Court of Appeals had defined "reasonably equivalent value" in this context to mean that "'the debtor has received value that is substantially comparable to the worth of the transferred property.'" *Id*. at 971 (quoting *United States v. Loftis*, 607 F.3d 173, 177 (5th Cir. 2010), in turn quoting *BFP v. Resolution Trust Cor*p., 511 U.S. 531, 548 (1994)). This court concludes that this definition of "reasonably equivalent value" comports with the ordinary meaning of the term in the context of IOWA CODE § 684.8(1).

The Tribe cites to numerous alleged weaknesses in the evidence that Stein has belatedly disclosed to show that any property (money) that was actually Hong Sun's was exchanged for the Assignments. This evidence casts doubt on whether *anything* of value was exchanged for the Assignments. *Id*. at 971. At the other end of the spectrum, there is evidence casting doubt on whether the property given was substantially comparable to the worth of the transferred property. *Id*. There is no evidence that Hong Sun has so far paid the entire $900,000 she agreed to pay for the Assignments, and Stein does not argue otherwise. Also, the evidence to which Stein points—his valuation of his claims in the

Golden litigation at $500,000 and valuations of his claims by his own expert at between $100,000 and $880,825—suggests that Hong Sun overpaid or agreed to overpay for the Assignments, which suggests something far different from a good faith transaction for reasonably equivalent value. Nevertheless, because the court does not weigh the evidence as summary judgment, *see Tolan*, 572 U.S. at 656; *Walz*, 2 F.4th at 1099, and the court must give Stein all reasonable inferences from the record evidence, the court finds that a reasonable factfinder could conclude that Hong Sun gave reasonably equivalent value for the Assignments. *Torgerson*, 643 F.3d at 1042-43. Instead, Stein has met his burden, *see Mensie*, 917 F.3d at 688, to submit evidentiary materials that set out specific facts showing that Hong Sun provided consideration substantially comparable to the worth of the property transferred by the Assignments. *Schippers*, 982 F. Supp. 2d at 971. Stein has provided documentary evidence—the weight or credibility of which is for the factfinder to determine—that purports to show payments and cancellations of debts that Hong Sun made to Stein that were attributed to her payment for the Assignments. Whether that payment is substantially comparable to the worth of the property transferred by the Assignments involves the weighing of evidence on numerous facts concerning what was credibly given and what the Assignments were reasonably worth.

The same is true of the Tribe's argument based on IOWA CODE § 684.5(2). That statutory provision provides what might be described as a partial defense to Stein's defense based on IOWA CODE § 684.8(1) in the specific circumstance of transfers involving antecedent debt. The statutory provision states,

> A transfer made by a debtor is voidable as to a creditor whose claim arose before the transfer was made if the transfer was [1] made to an insider [2] for an antecedent debt, [3] the debtor was insolvent at that time, and [4] the insider had reasonable cause to believe that the debtor was insolvent.

IOWA CODE § 684.5(2) (bracketed numbers inserted). IOWA CODE § 684.8(1) does not purport to provide a defense to a transfer voidable under this statutory provision, but only to a transfer that is voidable based on § 684.4(1)(a). IOWA CODE § 684.8(1) ("A transfer or obligation is not voidable under section 684.4, subsection 1, paragraph 'a', against a

person that took in good faith and for a reasonably equivalent value given the debtor or against any subsequent transferee or obligee.").

Here, the parties do not dispute that Hong Sun was an insider, nor do they appear to dispute that the transfer may have been for antecedent debt, but they do dispute the amount of the antecedent debt for which the transfer was actually made, ranging somewhere between nothing, according to the Tribe, and $381,101 according to Stein.   Similarly, the court found, above, that no reasonable factfinder could conclude that Stein was solvent at the time of the Assignments, but the court also concluded that there were genuine issues of material fact as to whether Hong Sun knew or believed in good faith that Stein was not insolvent at the time of the Assignments.   Thus, § 684.5(2) does not defeat Stein's defense.

Therefore, summary judgment on this element of Stein's § 684.8(1) defense is not appropriate.   *Torgerson*, 643 F.3d at 1042-43.

### *3.*     *Summary*

The court concludes that, because there are genuine issues of material fact on some of the "badges of fraud," summary judgment is not appropriate on the Tribe's equitable claim of fraudulent conveyances.   The Tribe is, however, entitled to summary judgment on some of the "badges of fraud" on which the Tribe relies, as set out, above, in Section II.C.1.b.   The court also concludes that, because there are genuine issues of material fact on both the "good faith" and "reasonably equivalent value" elements of Stein's defense to the Tribe's equitable claim, summary judgment is inappropriate on that defense.   The Tribe's Motion For Summary Judgment is denied as to the Tribe's equitable claim.

### *D.*     *The Declaratory Judgment Claim*

The Tribe also seeks summary judgment on its Second Claim For Relief called "Declaratory Judgment and Injunction (28 U.S.C. § 2201, *et seq*.)."   The Tribe argues that it is entitled to summary judgment on this claim for the reasons that it is entitled to summary judgment on its equitable claim.   Stein responds that the Tribe is not entitled to summary judgment, because there are disputed facts as to each of the Tribe's requested declarations. Because the court concluded, above, that summary judgment is not appropriate on the

Tribe's equitable claim in its entirety, it follows that summary judgment is not appropriate on the Tribe's declaratory judgment claim.

### III.   CONCLUSION

Upon the foregoing,

**IT IS ORDERED** that the Tribe's July 8, 2021, Motion For Summary Judgment [Dkt. No. 387] is **GRANTED in part and DENIED in part**, as follows:

1.      The Motion is **granted** as to certain "badges of fraud," as set out in Section II.C.1.b., but

2.      The Motion is **denied** as to the Tribe's First Claim For Relief called "Equitable Fraud Pursuant to Iowa Code Section 630.16," and

3.       The Motion is **denied** as to the Tribe's Second Claim For Relief called "Declaratory Judgment and Injunction (28 U.S.C. § 2201, et seq.)."

**DATED** this 7th day of March, 2022.

JOHN A. JARVEY
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF IOWA